IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Archie D. McRee, | ) | Civil Action No. 9:15-4579-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Dick's Sporting Goods, Inc., *and* Paradigm Health & Wellness, Inc., *f/k/a Paradigm Fitness Equipment, Inc.*, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on Plaintiff's motion to reconsider the Court's order granting summary judgment for Defendants. For the reasons set forth below, the Court grants in part and denies in part the motion to reconsider.

**I.     Background**

On January 22, 2014, Plaintiff Archie D. McRee purchased a new Fitness Gear-brand inversion table model FGIT-300, designed and supplied by Defendant Paradigm Health & Wellness, Inc., at the Dick's Sporting Goods, Inc. store in the Citadel Mall in Charleston, South Carolina. In October 2014, a recall was issued on the inversion table, allegedly "because the ankle locking system was found to fail, causing severe injuries to users and consumers." (Dkt. No. 69 ¶ 12.) Dick's Sporting Goods allegedly failed to notify Plaintiff about the recall. On February 2, 2015, Plaintiff inverted himself on the inversion table, and the ankle locking system separated, causing him to fall headfirst to the floor, resulting in severe and debilitating injuries.

On October 7, 2015, Plaintiff filed this product liability case in the South Carolina Court of Common Pleas for Beaufort County. On November 12, 2015, Defendants timely removed the case under 28 U.S.C. §§ 1441 and 1446. On August 19, 2016, Plaintiff filed an amended

complaint, alleging negligence (Count One), violation of the South Carolina Defective Product Act, S.C. Code § 15-73-10, *et seq.* (Count Two), breach of implied warranty of merchantability (Count Three), breach of implied warranty of fitness for a particular purpose (Count Four), and breach of express warranties (Count Five). On February 20, 2017, Defendants moved for summary judgment. On April 28, 2017, Senior United States District Judge Weston Houck granted Defendants' motion for summary judgment. On May 26, 2017, Plaintiff timely moved for reconsideration of that order. Following Judge Houck's passing, the case was assigned to the undersigned. The Court heard oral argument on the motion for reconsideration on November 8, 2017. This order now follows.[1]

## II. <u>Legal Standard</u>

### A. **Reconsideration**

Rule 59(e) of the Federal Rules of Civil Procedure governs motions to alter or amend a judgment; however, the rule does not provide a legal standard for such motions. The Fourth Circuit has articulated "three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (citing *EEOC v. Lockheed Martin Corp.*, 116 F.3d 110, 112 (4th Cir. 1997); *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993)). "Rule 59(e) motions may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." *Id.* at 403 (internal citations

---

[1] Pursuant to Rule 63 of the Federal Rules of Civil Procedure, the undersigned judge certifies his familiarity with the record in this case and determines that this case may be completed without prejudice to the parties.

omitted). Rule 59(e) provides an "extraordinary remedy that should be used sparingly." *Id.* (internal citation omitted). The decision to alter or amend a judgment is reviewed for an abuse of discretion. *Id.* at 402.

**B.     Summary Judgment**

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### III. Discussion

#### A. Product Defect Claims

In South Carolina, "there are three defects a plaintiff in a products liability lawsuit can allege: 1) a manufacturing defect, 2) a warning defect, and 3) a design defect." *Watson v. Ford Motor Co.*, 699 S.E.2d 169, 174 (S.C. 2010). "When a manufacturing defect claim is made, a plaintiff alleges that a particular product was defectively manufactured." *Id.* "When a warning defect claim is made, a plaintiff alleges that he was not adequately warned of dangers inherent to a product." *Id.* A product liability action "may be brought under several theories, including negligence, strict liability, and warranty. *Bragg v. Hi-Ranger, Inc.*, 462 S.E.2d 321, 325 (S.C. Ct. App. 1995). To prevail on a claim under any product liability theory, the plaintiff must satisfy three elements: "(l) he was injured by the product; (2) the injury occurred because the product was in a defective condition, unreasonably dangerous to the user; and (3) that the product at the time of the accident was in essentially the same condition as when it left the hands of the defendant." *Id.* at 326 (citation omitted). Under a negligence theory, the plaintiff must also prove that "the defendant (seller or manufacturer) failed to exercise due care in some respect, and, unlike strict liability, the focus is on the conduct of the seller or manufacturer, and liability is determined according to fault." *Id.* (citation omitted).

Further, there can be no design defect claim under any theory where a product is "accompanied by adequate warnings that, if followed, make the product safe for use." *Hickerson*, 2016 WL 4367141, at *5 (citing *Curcio v. Caterpillar, Inc.*, 543 S.E.2d 264, 268–69 (S.C. Ct. App. 2001). Plaintiff argues this rule applies only to strict liability claims and not to negligence claims, but he is incorrect:

> A product may, by reason of its nature and use, be unreasonably dangerous unless proper instructions and warnings are supplied for its intended use. Many products cannot be made completely safe for use. However, such products may be useful

> and desirable. If they are properly prepared, manufactured, packaged and accompanied with adequate warnings and instructions, they cannot be said to be defective.

*Claytor v. Gen. Motors Corp.*, 286 S.E.2d 129, 132 (S.C. 1982). But this rule does not make a design defect claim impossible in the absence of a warning defect. The rule simply provides that a product is not defectively designed merely because its safe use requires users to heed warnings.

Plaintiff contends that he was injured due to the unreasonably dangerous design of the inversion table, which was not disclosed by adequate warnings. In granting summary judgment, the Court ruled there was no evidence of a genuine dispute about whether Plaintiff was adequately warned of the risks associated with use of the inversion table or whether the inversion table is safe to use if the user heeds those warnings. The Court concluded that there was no dispute that users were adequately warned of the need to ensure the ankle locking system was properly secured or that, if the ankle locking system is properly secured, the table is safe for use.

The inversion table suspends a user upside-down (or nearly so) by holding his feet in an ankle locking system. The ankle locking system is secured by a spring-loaded locking pin that must be fully inserted into a hole on the instep frame. The parties agreed that the incident at issue likely occurred because the locking pin was not situated in the hole and was likely positioned between two holes. As a result, the ankle locking system failed, resulting in Plaintiff's injuries. The Court ruled that the ankle locking system failed because Plaintiff did not comply with the instructions and warnings at the time of the Incident," because there is no dispute that had Plaintiff effectively secured the ankle assembly, he would not have fallen. (*See* Dkt. No. 121 at 15.)

In support of his motion for reconsideration, Plaintiff argues that there is evidence the inversion table warnings were insufficient and the design defective, pointing to the report of Dr. Bryan Durig, Plaintiff's expert, Dr. Durig's deposition testimony, the safety recall of the

inversion table, and an engineering report on the ankle locking system commissioned by Defendant Dick's Sporting Goods. After carefully reviewing the record evidence, the Court must agree with Plaintiff. As noted above, it appears uncontested that had Plaintiff effectively secured the ankle assembly, he would not have fallen. But summary judgment for Defendants based on that fact was a clear error of law. The alleged defect is not that the table components lack the tensile strength to hold a user in place. The alleged defect is that it is unreasonably difficult for a user to ensure that the ankle locking system is secured properly and that, while the need to secure the ankle system is adequately warned (*see* Dkt. No. 81-7 at 7), the difficulty ensuring that it is secured is not adequately warned.

Plaintiff correctly argues there is record evidence indicating that it is unreasonably difficult for a user to ensure that the ankle locking system is properly secured. Plaintiff testified that he believed that he had properly secured ankle assembly, yet it failed. (Dkt. No. 81-8 at 16.) To be sure, Plaintiff made arguably inconsistent statements to certain physicians, but Plaintiff's credibility is for a jury to decide. Plaintiff's expert, Dr. Durig, opined and testified that it was difficult to see, hear, or feel whether the locking pin in fact has been inserted properly into a hole on the instep frame. (Dkt. No. 92-2 at 7; Dkt. No. 81-10 at 10, 14, 15, 18.) He also testified that the tolerance between the diameters of the locking pin and the instep frame holes was excessively tight, which could make it difficult to insert the locking pin properly. (Dkt. No. 81-10 at 9, 11.) In response to an earlier injury claim regarding the inversion table, Defendant Dick's Sporting Goods engaged Mesa Associates, an engineering firm, to test the table's ankle locking system. In a report dated October 31, 2013, Mesa Associates stated that "if the user verifies that the small spring knob pin is engaged and tests the engagement in accordance with the operating instructions the adjustable instep frame will support the user of the machine

without the risk of sudden failure" but "if the small spring knob pin is not completely engaged in the adjustable instep frame, it is possible that . . . while inverted, the user could fall from the machine." (Dkt. No. 90-8.) In October 2014, Defendant Dick's Sporting Goods recalled the table at issue because "customers who do not properly lock themselves into the Inversion Tables may be at risk of falling out of the units." (Dkt. No. 81-25 at 5.)

At the hearing on the motion to reconsider, Defendants' counsel conceded there is a genuine dispute of fact regarding the difficulty of ensuring that the ankle assembly is secured properly, but argued the dispute is immaterial because it is "not impossible" for a user to ensure the ankle assembly is secure. But that is not the standard for liability under any legal theory. For liability in negligence, the standard is that the seller or manufacturer failed to exercise due care in some respect and that the product is unreasonably dangerous. For strict liability, the standard simply requires a product to be "unreasonably dangerous for its intended use." *Bragg*, 462 S.E.2d at 328. There are two tests to determine whether a product is unreasonably dangerous for its intended use. "The first test is whether the product is unreasonably dangerous to the ordinary consumer or user given the conditions and circumstances that foreseeably attend the use of the product." *Id.* (citing *Claytor*, 286 S.E.2d at 131). "Under the second test, a product is unreasonably dangerous and defective if the danger associated with the use of the product outweighs the utility of the product." *Id.*

Plaintiff has proffered ample evidence to support his contention that the inversion table is unreasonably dangerous to the ordinary consumer in the conditions that foreseeably attend the use of the table. The Court's order of April 28, 2017 therefore committed a clear error of law when holding that no genuine dispute of material fact exists in this case. The Court further notes that order is inconsistent with the recent rulings of other courts that have considered virtually

identical claims. For example, in *Sahm v. STL International, Inc.*, the District of Oregon considered a defense argument for summary judgment that is essentially identical to Defendants' argument in this case:

> Based on Plaintiff's testimony, Defendants argue as their first premise that it is undisputed that the pin used in the ankle locking mechanism was correctly locked in place before Plaintiff inverted. To this, Defendants add, as their second premise, the testimony of their expert, which is unrebutted by Plaintiff's experts on this point, that it is impossible for the ankle lock mechanism unexpectedly to open or release if the pin is locked correctly in place. Thus, conclude Defendants, Plaintiff has failed to show either causation or defective design.
>
> The error in Defendants' reasoning is that their first premise is not supported, or at least not compelled, by the evidence. Plaintiff's deposition testimony does not prove, at least not beyond genuine dispute, that the pin used in the ankle locking mechanism was correctly locked in place before Plaintiff fully inverted. All that Plaintiff's testimony proves is that Plaintiff believed it was correctly locked in place before he inverted. But that is not the same thing as proving that the pin was in fact correctly locked in place. Indeed, in light of the unrebutted testimony of Defendants' expert on this point, it would have been impossible for the pin to have been correctly locked in place based on the fact that the ankle locking mechanism unexpectedly opened, causing Plaintiff to fall. At summary judgment, the Court must accept as true Plaintiff's testimony that he fell after the ankle locking mechanism unexpectedly opened while he was fully inverted. There is nothing in the record to show how this accident could have occurred but for the pin not being fully and correctly locked in place, notwithstanding Plaintiff's testimony that he believed that it was. Viewing the evidence in the light most favorable to the non-moving party, as the Court must do at this stage of the proceeding, the evidence simply shows that Plaintiff was mistaken.

No. 3:13-CV-0806-SI, 2015 WL 1825368, at *11 (D. Or. Apr. 22, 2015); *see also Chong v STL Int'l, Inc.*, 152 F Supp 3d 1305 (D Ore. 2016). The Court therefore grants the motion to reconsider as to Plaintiff's product defect claims.

**B.  Negligence Claims Related to Recall**

The Court's order of April 28, 2017 also granted summary judgment for Defendants as to Plaintiff's claim that Dick's Sporting Goods was negligent in failing to inform Plaintiff of its voluntary recall of the inversion table. According to Plaintiff, "McRee's claims [for negligence regarding the recall] rest[] solely on the state law regarding duties voluntarily undertaken" but

the Court "failed to adequately address the primary issue of common law negligence for the voluntarily assumed duty." (Dkt. No. 123-1 at 6.)

Plaintiff's argument for reconsideration with regard to the recall is without merit. As the Court previously held, under South Carolina law, a duty arising from "an act ... voluntarily undertaken" imposes liability when the "failure to exercise such care increases the risk of such harm" or "the harm is suffered because of the other's reliance upon the undertaking." *Johnson v. Robert E. Lee Acad., Inc.*, 737 S.E.2d 512, 514 (S.C. Ct. App. 2012). Plaintiff did not rely on the recall because he did not know about it. Clearly, the failure to notify Plaintiff of the recall did not somehow render the inversion table more dangerous than it already was. There is no merit to Plaintiff's contrary argument that the failure to notify did increase the risk to Plaintiff because he would have then ceased using the inversion table. It is well established that to increase the risk of harm in this context means that the partial or negligent performance of a voluntarily undertaken duty actually increased the risk of harm over the risk existing had the defendant never acted. *See* Restatement (Second) of Torts § 323 (1965) (comments and reporter's notes).

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion to reconsider (Dkt. No. 123). The Court **VACATES** parts IV.A ("Warning Defect") and IV.B ("Design Defect") of the Court's order of April 28, 2017 (Dkt. No. 121) and **DENIES** Defendants' motion for summary judgment (Dkt. No. 81) as to warning and design defect claims. The motion to reconsider is otherwise **DENIED**.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

November 9, 2017
Charleston, South Carolina

-9-